**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-02393** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **F. WALTERS, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case in which pro se Plaintiff Brandon Timmons

("Timmons") alleges that Defendants violated his civil rights by interfering with his mail for

several months beginning in late 2020.  Presently before the Court is Defendants' motion for

summary judgment.  (Doc. No. 110.)  For the following reasons, the Court will grant the motion

in part and deny it in part.

## I.     BACKGROUND AND PROCEDURAL HISTORY[1]

Timmons initiated this case through the filing of a civil rights complaint pursuant to 42

U.S.C. § 1983 on December 21, 2023.  (Doc. No. 1.)  The case is proceeding on Timmons's third

amended complaint.  (Doc. No. 79.)  According to the allegations in the third amended

complaint, the Defendants tampered or interfered with Timmons's mail on several occasions

between 2020 and 2021 while Timmons was incarcerated in Frackville State Correctional

Institution ("SCI-Frackville").  (Id.)  Specifically, the third amended complaint alleges that on

September 4, 2020, Defendant Walters ("Walters"), SCI-Frackville's mailroom inspector

---

[1]  Defendants' statement of material facts does not address the substance of Timmons's
allegations other than stating that Timmons "lacks competent, admissible evidence to support his
allegations."  See, e.g., (Doc. No. 111 ¶ 6).  The Court includes the factual allegations from
Timmons's currently operative third amended complaint to aid the reader's understanding of the
nature of this case.  Nothing in this section shall be construed as a finding that the facts alleged in
Timmons's third amended complaint are undisputed.

supervisor, discarded two magazines, a catalogue, and a newsletter that were mailed to Timmons.  (Id. at 3.)  Walters allegedly told Timmons after doing so that she had discarded the items as "payback" for an incident that Timmons had had with another correctional officer several months earlier.  (Id.)  Defendant Tomcavage ("Tomcavage")[2] then allegedly discarded a book that was mailed to Timmons later in September 2020.  (Id.)

On October 8, 2020, Timmons told Walters that he believed employees in the mailroom were interfering with his mail.  (Id.)  Sometime after Timmons told Walters about this, Defendant Hines ("Hines") purportedly sent a book that was mailed to Timmons to another facility, resulting in the book not being delivered to Timmons until December 2020.  (Id. at 3–4.) Hines's actions were purportedly done in retaliation for a grievance Timmons had filed in September 2020.  (Id. at 4.)

On November 17, 2020, Timmons allegedly attempted to send mail to his mother, his grandparents, and Attorney Colin Carriere ("Attorney Carriere").  (Id.)  Tomcavage purportedly discarded the mail and later told Timmons that she had done so in retaliation for Timmons filing lawsuits against prison officials.  (Id.)  Timmons then attempted to send mail to his aunt on November 21, 2020, and Tomcavage again allegedly discarded it.  (Id.)

On December 4, 2020, Walters allegedly discarded a magazine that had been mailed to Timmons.  (Id. at 5.)  On December 8, 2020, Timmons allegedly attempted to mail a letter and an "empty milk carton" to Attorney Carriere.  (Id.)  Defendant Styka purportedly opened the mail and removed the milk carton before it was delivered to Attorney Carriere.  (Id.)

---

[2]  Defendants have clarified for the record that Tomcavage's last name is actually "Tomcavage-Adamcik."  (Doc. No. 112 at 1 n.1.)  The Court will adopt the style convention used by all parties and refer to this Defendant as "Tomcavage" throughout the remainder of this Memorandum.

On December 7, 2020, Timmons sent a $400.00 check to this Court for payment of a filing fee along with a piece of legal mail. (Id.) The Court sent the check back as a duplicate. (Id.) The prison returned the funds from the check to Timmons's account, but purportedly discarded the legal mail. (Id.) Sometime around January 11, 2021, Tomcavage and Hines purportedly discarded a $15.00 check that had been sent to Timmons from this Court to refund an incorrect payment Timmons had made. (Id.)

On January 28, 2021, Timmons was purportedly given legal mail thirty-seven (37) days after it had been sent by this Court. (Id. at 6.) The mail was allegedly held by Hines for that entire period as retaliation for Timmons filing a lawsuit against prison officials. (Id.) Subsequently, on February 9, 2021, Tomcavage purportedly stole a $400.00 check that Timmons mailed to this Court for payment of a filing fee. (Id.)

On March 20, 2021, Styka allegedly discarded an authorization that Timmons had attempted to mail to Jefferson Memorial Hospital for release of his medical records. (Id. at 7.) After doing so, Styka allegedly told Timmons not to send mail to the hospital and told him that if he filed a grievance against her he would have his "ass whooped" and his "nose broken." (Id.) Styka allegedly also discarded mail that Timmons attempted to send to Attorney Carriere on March 14, 2021, and told him she would "have him stabbed if he filed a grievance on her." (Id.)

On March 29, 2021, Timmons attempted to send a check to this Court for $23.63 to request a copy of the docket sheet in one of his pending civil cases. (Id.) Prison officials allegedly confiscated the check and then forged documents to make it appear that this Court had stated that Timmons had not sent sufficient funds to fulfill his request. (Id.) On April 15, 2021, Attorney Carriere attempted to send mail to Timmons but the mail was returned to him without ever being delivered to Timmons. (Id. at 8.) The mail was allegedly sent back by Defendant

Hines as retaliation for Timmons filing lawsuits against prison officials.  (Id.)  Carriere attempted to send mail to Timmons again on May 24, 2021, which included medical documents.  (Id.)  Tomcavage allegedly opened the mail and discarded the medical documents.  (Id.)  In May 2021, Timmons purportedly learned that prison officials had been discarding "Edward R. Hamilton catalogues" that had been mailed to him for several months.  (Id.)

In June 2021, Timmons attempted to send mail to his grandfather which was allegedly discarded by Tomcavage.  (Id.)  Tomcavage purportedly told Timmons that she would continue to throw away his mail if he continued to file grievances and lawsuits against prison officials.  (Id.)  Timmons then allegedly learned in September 2021, that prison officials were altering mail that was sent to him using photo-editing technology.  (Id. at 9.)  Specifically, prison officials purportedly altered the documents to make it appear that they had been picked up at post offices on certain dates to conceal the fact that they were withholding mail from Timmons.  (Id.)  Prison officials also allegedly altered a list of staff members that had been sent to Timmons pursuant to a Right to Know law request so as to remove several names from the list.  (Id.)  The third amended complaint similarly alleges that prison officials altered a list of physicians that had been sent to Timmons pursuant to a Freedom of Information Act request so that the list would be returned to its sender and not delivered to Timmons.  (Id. at 10.)  These alterations were purportedly done in retaliation for Timmons filing lawsuits against prison officials.  (Id.)

The third amended complaint alleges that Timmons alerted Defendants Walters, Brittain, Styka, and Kephart about possible interference with his mail on several different occasions in 2020 and 2021 but that Defendants took no action to stop the alleged interference.  (Id. at 11.)  On March 3, 2020, Timmons allegedly learned of several more instances of interference with his mail that occurred during the relevant period between 2020 and 2021.  (Id.)  The third amended

complaint asserts claims for violation of the First Amendment, supervisory liability, retaliation in violation of the First Amendment, violation of Timmons's right to due process under the Fourteenth Amendment, and intentional infliction of emotional distress.  (Id. at 13–14.) Timmons seeks compensatory and punitive damages as well as a declaration that Defendants violated his constitutional rights.  (Id. at 14.)

Defendants answered the third amended complaint on August 29, 2022.  (Doc. No. 80.) Following the close of fact discovery, Defendants filed the instant motion for summary judgment on May 1, 2023, along with a supporting brief and a statement of material facts.  (Doc. Nos. 110–12.)  Briefing on the motion is complete and the motion is ripe for judicial review.  (See Doc. Nos. 112, 128, 136.)

## II.    MATERIAL FACTS[3]

Between September 2020 and June 15, 2021, Timmons filed forty-five (45) grievances. See (Doc. No. 111 ¶ 4; Doc. No. 129 ¶ 4).[4]  Only thirteen (13) of those grievances are relevant to this case.  (Doc. No. 111 ¶ 5; Doc. No. 129 ¶ 5.)[5]  Timmons does not mention Defendants

---

[3]  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 Statement of Facts ("SOF") and Timmons's response to Defendants' SOF.  (Doc. Nos. 111, 129.)  Because the only facts asserted by Defendants pertain to Timmons's attempts to exhaust administrative remedies, this section only addresses facts relevant to the issue of exhaustion.

[4]  Timmons asserts that he filed "more than 45 grievances" during this period, (Doc. No. 129 ¶ 4), but the only evidentiary support he offers for this assertion is his own conclusory declaration that "[t]here are more grievances I attempted to submit but I cannot provide specific dates and copies because many of my papers have been stolen by prison officials,"  (Doc. No. 128-1 at 1). The Court finds this conclusory assertion insufficient to create a genuine dispute of material fact.

[5]  The relevant grievances were filed under grievance numbers 893783, 901975, 902223, 907069, 908839, 909106, 909356, 913038, 914928, 917009, 927982, 927985, and 930047. See (Doc. No. 111 ¶ 5; Doc. No. 111-1 at 48–72 (containing relevant grievances as exhibits to Defendants' motion for summary judgment)).  Timmons asserts that some of the other grievances "may raise issues related to this litigation," (Doc. No. 129 ¶ 6), but he does not offer any evidentiary support for this statement or explain what relevant issues the other grievances

Walters, Walton, Brittain, Styka, or Kephart in those thirteen grievances.  See (Doc. No. 111-1 at 48–72).  Timmons names Defendant Tomcavage in Grievance Number 906069 and names Defendant Hines in Grievance Number 914928.  See (Doc. No. 111-1 at 54, 64).  Timmons did not request damages in either of those two grievances.  (Id.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his

---

raised.  Timmons's unsupported speculation is not sufficient to create a genuine dispute of material fact.

or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## IV.   DISCUSSION

Defendants assert seven arguments in support of their motion for summary judgment, as follows: (1) Timmons failed to exhaust administrative remedies prior to filing suit; (2) Timmons cannot establish that Defendants Brittain, Kephart, and Walton were personally involved in the alleged civil rights violations; (3) Defendants are entitled to sovereign immunity as to any official capacity claims; (4) Timmons cannot establish any of his claims on the merits;[6] (5) Defendants are entitled to qualified immunity with respect to Timmons's constitutional claims; (6) Defendants are entitled to sovereign immunity as to Timmons's state law tort claims; (7) all claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA"); and (8) there is no basis for punitive damages.  (Doc. No. 112 at 12.)

At the outset, the Court notes that Timmons's claims for declaratory relief are moot. Declaratory judgment claims are prospective in nature and cannot be used to declare the rights of litigants with respect to past harms.  See CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 628 (3d Cir. 2013).  As a result, a prisoner's "transfer from the facility complained of generally moots the equitable and declaratory claims."  See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir.

---

[6]  Defendants' brief frames this argument as four separate arguments addressing each of Timmons's constitutional claims.  The Court has restated it as one argument in the interest of brevity.

2003) (citing Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)).  Here, Timmons is no longer incarcerated in SCI-Frackville, and there does not appear to be any possibility of the constitutional violations at issue in the case being repeated in the future.  Accordingly, his claims for declaratory relief are moot.

As an additional preliminary matter, the Court will grant summary judgment to Defendants on all official capacity claims and all state tort claims because Timmons concedes that Defendants are entitled to sovereign immunity as to these claims.  See (Doc. No. 112 at 32–33, 42–44; Doc. No. 125 at 2).  Turning to Timmons's damages claims, the Court will first consider Defendants' argument that Timmons failed to exhaust administrative remedies.

## A.     Exhaustion

Under the PLRA, prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court.  See 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020).  The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison.  See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  The failure to exhaust available administrative remedies is an affirmative defense.  See Jones v. Bock, 549 U.S. 199, 216 (2007).  Accordingly, "[T]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).

A prisoner is only required to exhaust administrative remedies that are "available."  See id. at 266 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such

as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation.'"  See id. at 266–67 (quoting Ross v. Blake, 578 U.S. 632,

643–44 (2016)).

      Under the Pennsylvania Department of Corrections' grievance policy, DC-ADM 804, a

prisoner must first submit a written grievance within fifteen (15) days from the date of the

incident.  See DC-ADM 804 § 1(A)(8), (Doc. No. 111-1 at 10).  DC-ADM 804 provides that the

grievance must include "a statement of the facts relevant to the claim," "identify individuals

directly involved in the events," and "specifically state any claims [the inmate] wishes to make

concerning violations of Department directives, regulations, court orders, or other law."  See id.

§ 1(A)(11), (Doc. No. 111-1 at 10).  "If the inmate desires compensation or other legal relief

normally available from a court, the inmate must request the specific relief sought in his/her

initial grievance."  Id. § 1(A)(11)(d), (Doc. No. 111-1 at 10); see also Wright v. Sauers, 729 F.

App'x 225, 227 (3d Cir. 2018) (unpublished) (noting that prisoner plaintiff's claim for monetary

damages is procedurally defaulted under DC-ADM 804 when plaintiff fails to request monetary

damages in his initial grievance).  Next, the prisoner must submit a written appeal to an

intermediate review level within fifteen (15) working days.  See id. § 2(A)(1)(a), (Doc. 111-1 at

20).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances

and Appeals within fifteen (15) working days.  See id. § 2(B)(1)(b), (Doc. 111-1 at 23).

      Having reviewed the record of this case, the Court finds that Defendants have established

the affirmative defense of failure to exhaust administrative remedies with respect to Timmons's

claims against Defendants Walters, Walton, Brittain, Kephart, and Hines. There is no genuine issue of material fact on the issue of exhaustion with respect to these defendants. The record reflects that Timmons did not name Walters, Walton, Brittain, or Kephart in any of the grievances at issue in this case and that he failed to request damages in the grievances in which he named Hines. <u>See</u> (Doc. No. 111-1 at 48–72).

The only evidence Timmons has produced to suggest that there is a genuine dispute of material fact is a declaration from himself in which he makes several conclusory assertions related to his purported exhaustion of administrative remedies. First, Timmons asserts that there are "more grievances" that he attempted to file relating to the events of this case beyond those cited by defendants, but that he cannot provide "specific dates and copies because many of [his] papers have been stolen by prison officials." (Doc. No. 128-1 at 1.) Second, Timmons asserts that exhaustion of Grievance Number 907069 was "thwarted by a continual non-response of my grievance appeals which I submitted to [the] facility grievance coordinator in the month of January 2021." (<u>Id.</u> at 3.) Timmons offers no documentary support for this assertion, such as copies of the appeals that he purportedly tried to submit. (<u>Id.</u>) Third, Timmons asserts in conclusory fashion that administrative remedies "were made unavailable" with respect to the facts asserted in paragraph 11 of the third amended complaint, but does not explain how this occurred. (<u>Id.</u>) Fourth, Timmons asserts that he attempted to exhaust his claims against Hines but that prison officials declined to respond. (<u>Id.</u> at 3–4.) Timmons states that he "cannot provide dates or copies" to support this assertion "because prison officials have stolen [his] legal papers and notes." (<u>Id.</u> at 4.)

Timmons's conclusory and unsupported assertions are not sufficient to create a genuine dispute of material fact. To defeat a properly supported motion for summary judgment, a

plaintiff cannot simply replace "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (quoting Kirleis v. Dickie, McCarney & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)). A plaintiff's "[b]are assertions, conclusory allegations, or suspicions" do not suffice to defeat a motion for summary judgment. See Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d Cir. 2023) (quoting Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 288–89 (3d Cir. 2018)). Thus, because Defendants have come forward with evidence that Timmons failed to exhaust administrative remedies with respect to his claims against Walters, Walton, Brittain, Kephart, and Hines, the Court finds there is no genuine dispute of material fact as to whether Timmons exhausted administrative remedies on these claims. Walters, Walton, Brittain, Kephart, and Hines are entitled to judgment as a matter of law because Timmons's failure to name Walters, Walton, Brittain, and Kephart in any grievance and failure to request damages from Hines constitutes a failure to exhaust administrative remedies under DOC policy. See DC-ADM 804. The Court will grant summary judgment to these Defendants on this basis.

The Court will also grant summary judgment to Tomcavage on all claims other than Timmons's retaliation claim based on Timmons's failure to exhaust administrative remedies. It appears from the record that Timmons attempted to exhaust his non-retaliation claims against Tomcavage by filing Grievance Number 907069 on December 26, 2020. (Doc. No. 111 at 5). Timmons failed to exhaust his damages claim in this grievance because he failed to request any damages in the grievance. See id.; DC-ADM 804 § 1(A)(11)(d).

The court finds, however, that genuine disputes of material fact preclude a finding that Timmons failed to exhaust administrative remedies with respect to his retaliation claim against Tomcavage.  Timmons states in his sworn declaration that he attempted to file a grievance in June 2021 complaining about Tomcavage's retaliation but that prison officials never processed the grievance.  (Doc. No. 128-1 at 4.)  Timmons attaches grievances he filed on June 15, 2021, August 20, 2021, and October 28, 2021, complaining about the failure to process his original grievance.  (Doc. No. 128-2 at 6–8.)  Defendants have not responded to this assertion or provided any evidence indicating that prison officials processed the original June 2021 grievance.  A prison grievance process may be deemed unavailable—and thus fully exhausted—when a prison fails to timely respond to an inmate's grievance in accordance with its own procedural rules.  See Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016); Small v. Camden Cnty., 273–74 (3d Cir. 2013).  Thus, because there is a genuine dispute of material fact as to whether prison officials processed and responded to Timmons's June 2021 grievance against Tomcavage, the Court finds that it cannot grant summary judgment to Tomcavage on Timmons's retaliation claim on the basis of failure to exhaust administrative remedies.

The Court also cannot conclude at this stage of litigation that Timmons failed to exhaust administrative remedies with respect to his claims against Defendant Styka because there are genuine disputes of material fact as to whether the prison's grievance process was available.  The Third Circuit Court of Appeals has recognized that a prison grievance process is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through . . . intimidation."  See Rinaldi, 904 F.3d at 266–67 (quoting Ross, 578 U.S. at 643–44).

In this case, the record reflects that Timmons did not file any grievances against Styka, but he states in his declaration that he did not do so because Styka told him she would have

officers "stab" him, "whoop" him, and break his nose if he filed a grievance against her. (Doc. No. 128-1 at 5.) Defendants argue that this declaration is self-serving and unsupported, see (Doc. No. 136 at 14), but they do not offer any evidence to rebut Timmons's contention that Styka threatened him. The Court finds that Timmons's assertion of threats by Styka is sufficient to create a genuine dispute of material fact as to whether the administrative remedy process was available to Timmons. Any finding to the contrary would require this Court to make credibility determinations that are impermissible at this stage of litigation.

### B.   Merits

Having resolved the issue of administrative exhaustion, the Court's analysis proceeds to the merits on Timmons's retaliation claim against Tomcavage and Timmons's claims against Styka. Timmons asserts claims against Styka for violation of the First Amendment, supervisory liability, retaliation, and denial of due process.

### 1.   Retaliation

Timmons's retaliation claims against Tomcavage and Styka require proof that: (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Defendants argue that Timmons's retaliation claims fail as a matter of law because interference with a prisoner's mail is not a sufficiently adverse action to support a retaliation claim and because Timmons cannot establish a causal connection between Defendants' actions and Timmons's protected conduct. (Doc. No. 112 at 37–39.) The Court disagrees. Defendants cite Huertas v. Sobina, 476 F. App'x 981, 984 (3d Cir. 2012) (unpublished) for the proposition

that interference with a plaintiff's mail does not constitute an adverse action, but <u>Huertas</u> does not establish a <u>per se</u> rule that interference with mail is always insufficient to constitute an adverse action, and the Court finds that the interference with mail allegedly committed by Tomcavage and Styka was sufficiently serious for a finder of fact to conclude that it would deter an ordinary person from exercising his constitutional rights.

The Court additionally finds that Timmons has come forward with sufficient evidence of both an adverse action and a causal connection for his retaliation claims to survive Defendants' motion for summary judgment. Timmons states in his sworn declaration that: (1) Styka confiscated and destroyed legal mail Timmons sent to his attorney and an authorization to release medical information that he was attempting to send to a hospital; (2) Styka told Timmons she destroyed the documents in retaliation for him filing grievances and complaints against prison officials; and (3) Styka threatened Timmons with physical violence if he reported her actions. (Doc. No. 128-1 at 5.) Similarly, Timmons states in his declaration that Tomcavage interfered with his mail on numerous occasions over a period of several months, including several instances in which she destroyed his mail, and that she told Timmons she was destroying his mail in retaliation for the filing of grievances and complaints. (<u>Id.</u> at 2–7.) The Court finds this evidence sufficient to survive Defendants' motion for summary judgment. Although the finder of fact may disbelieve Timmons's assertions that Defendants openly admitted to him that they destroyed his mail and that they did it for retaliatory purposes, this would require a credibility determination that this Court may not make at this stage of litigation. The Court will accordingly deny the motion for summary judgment with respect to Timmons's retaliation claims against Tomcavage and Styka.

2.      **First Amendment Claim**

Timmons's First Amendment claim against Styka is predicated on three instances in which Styka allegedly interfered with his mail.  On December 8, 2020, Styka purportedly removed an "empty milk carton" that Timmons had attempted to mail to Attorney Carriere.  (Doc. No. 79 at 5.)  On March 14, 2021, Styka allegedly seized and discarded legal mail that Timmons was attempting to mail to Attorney Carriere.  (Id. at 7.)  And on March 20, 2021, Styka allegedly seized and discarded an authorization for release of medical records that Timmons was attempting to send to Jefferson Memorial Hospital.  (Id.)

The Court will grant summary judgment to Styka on Timmons's First Amendment claim.  The third amended complaint does not specify how sending an "empty milk carton" constitutes speech, and it therefore does not appear that removing the carton from Timmons's outgoing mail violated the First Amendment.  As for the other two instances of alleged mail interference, the Court finds that, even if they were proven true at trial, they would not amount to a violation of the First Amendment.  As Defendants note, see (Doc. No. 33), isolated instances of mail tampering by prison officials are generally insufficient to establish a violation of the First Amendment.  See Iwanicki v. Pa. Dep't of Corrs., 582 F. App'x 75, 79 (3d Cir. 2014) (unpublished); Alexander v. Gennarini, 144 F. App'x 924, 926 (3d Cir. 2005) (unpublished).  To establish a violation of the First Amendment, the plaintiff must generally come forward with sufficient evidence to show "that there exists a pattern or practice" of interfering with the plaintiff's mail.  See Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in nonrelevant part by Lewis v. Casey, 518 U.S. 343 (1996), as recognized by Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997).  The Court finds that two instances in which Styka allegedly interfered with Timmons's mail and a third instance in which Styka removed an "empty milk

carton" from the mail are insufficient to establish a pattern or practice of interference with Timmons's mail.  Summary judgment will accordingly be granted to Styka on the First Amendment claim.

### 3.    Supervisory Liability Claim

To succeed on his supervisory liability claim against Styka, Timmons must establish either: (1) that Styka "established and maintained a policy, practice or custom which directly caused" Timmons constitutional harm; or (2) that Styka participated in, directed, or knew about and acquiesced in violations of Timmons's constitutional rights by Styka's subordinate correctional officers.  See Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citing A.M. *ex rel.* J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).  The Court agrees with Defendants that Timmons has not come forward with sufficient evidence for this claim to survive summary judgment.  Timmons states in his sworn declaration that he sent a request slip to Styka on January 10, 2021, stating that his "mail was being tampered with and discarded by her subordinates," and asking Styka to "take action to stop it," but Styka allegedly refused to help Timmons.  (Doc. No. 128-1 at 4.)  Timmons does not state what facts he told Styka to substantiate his claim that prison officials were tampering with his mail.  Absent such evidence, Styka cannot be held liable for the actions of his subordinates because it cannot be inferred from the record that Styka had knowledge of any actual constitutional violation by her subordinate officers.  At most, the record shows that Timmons sent a request slip to Styka baselessly speculating that prison officials were tampering with his mail and that Styka did not do anything in response to Timmons's speculation.  This is not sufficient to establish supervisory liability.  The Court will accordingly grant summary judgment to Styka on this claim.

17

### 4.   Due Process Claim

The Court will also grant Styka summary judgment on Timmons's due process claim. Due process claims based on destruction or deprivation of a prisoner's personal property fail as a matter of law if the government provides adequate post-deprivation procedures to remedy the loss of the property.  See Hudson v. Palmer, 468 U.S. 517, 533–34 (1984).  The Third Circuit has held that the DOC's grievance process generally provides an adequate post-deprivation remedy for the destruction of property, see Pressley v. Johnson, 268 F. App'x 181, 183 (3d Cir. 2008) (unpublished); Jordan v. Horn, 165 F. App'x 979, 981 (3d Cir. 2006) (unpublished), and Timmons has not produced any evidence to support a contrary conclusion in this case.  His due process claim accordingly fails as a matter of law.  See Jordan, 979 F. App'x at 981 (holding that defendants were entitled to summary judgment on plaintiff's due process claim where plaintiff failed to submit evidence to show that post-deprivation remedy was inadequate).

### C.   Qualified Immunity

The Court will deny Defendants' assertion of qualified immunity with respect to Timmons's remaining retaliation claims.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Because qualified immunity is an affirmative defense, the defendants asserting qualified immunity have the burden of proof to show that they are entitled to qualified immunity.  See Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014).

Defendants have not met their burden to establish the affirmative defense of qualified immunity.  Defendants state in general terms that they are entitled to qualified immunity, but

they do not advance any specific arguments as to how they are entitled to qualified immunity with respect to Timmons's retaliation claims, which are the sole claims that have survived the other portions of the Court's analysis.  Accordingly, the Court will deny the motion to the extent it seeks summary judgment on the basis of qualified immunity.

> **D.      Damages**

Finally, the Court will consider Defendants' requests to bar Timmons from recovering compensatory and punitive damages.  Defendants argue that compensatory damages are barred by the PLRA because Timmons does not allege that he suffered any physical harm.  (Doc. No. 112 at 47–48.)  The Court agrees.  The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  See 42 U.S.C. § 1997e(e).  The Third Circuit has interpreted this provision to bar claims for compensatory damages when the only basis for compensatory damages would be "mental and/or emotional injury" arising from the violation of a plaintiff's constitutional rights.  See Allah v. Al-Hafeez, 226 F.3d 247, 250–53 (3d Cir. 2000).  That is exactly the situation presented by this case.  The Court cannot discern any basis from the third amended complaint for Timmons to recover compensatory damages for his remaining retaliation claims other than emotional injury caused by the alleged violation of his constitutional rights.  Such a claim for compensatory damages is barred by the PLRA.  See 42 U.S.C. § 1997e(e); Allah, 226 F.3d at 250–53.

Defendants also seek to bar Timmons from recovering punitive damages.  Punitive damages may be recovered in a federal civil rights action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others." See Alexander v. Riga, 208 F.3d 419, 430–31 (3d Cir. 2000); see also Allah, 226 F.3d at 251 (noting that nominal and punitive damages may be awarded for violation of a prisoner plaintiff's civil rights even when the plaintiff's claim for compensatory damages is barred by the PLRA). At this stage of litigation, the Court cannot say as a matter of law that Timmons would be unable to prove that Defendants acted with reckless or callous indifference to his civil rights in committing the alleged acts of retaliation. The Court will accordingly allow Timmons's punitive damages claim to proceed.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion for summary judgment (Doc. No. 110) with respect to Timmons's retaliation claims against Defendants Tomcavage and Styka and grant the motion for summary judgment in all other respects. To facilitate a timely and efficient resolution of this matter, the Court will require the parties to file a joint status report indicating whether they wish to have this case referred for mediation in the Court's Prisoner Litigation Settlement Program. If this case is not resolved through mediation, the Court will schedule an evidentiary hearing, at which the Court will act as the finder of fact, See Small, 728 F.3d at 270–71, to determine whether Defendants can establish the affirmative defense of failure to exhaust administrative remedies with respect to the remaining retaliation claims. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania